[Civil No. 4504. Filed November 9, 1942.]

[130 Pac. (2d) 910.]

THE STATE OF ARIZONA; AMOS A. BETTS, WILLIAM (BILL) PETERSON, and WILSON T. WRIGHT, as Members of and Constituting the ARIZONA CORPORATION COMMISSION, Appellants, v. ALIANZA HISPANO-AMERI-CANA, a Fraternal Benefit Society, Appellee.

Mr. Joe Conway, Attorney General of Arizona, Mr. Albert M. Garcia, Assistant Attorney General, of Phoenix, Arizona; Mr. Donald R. Luckham, of Los Angeles, California; and Mr. Otto Fredriechs, of Denver, Colorado, for Appellants.

Messrs. Misbaugh & Fickett, Mr. Greg Garcia, and Mr. Ralph Estrada, for Appellee.

LOCKWOOD, C. J.—The Arizona Corporation Commission, plaintiff, applied to the superior court of Pima County for an order authorizing plaintiff to take possession of the property, records, effects and business of Alianza Hispano-Americana, defendant. The matter was heard before the court without a jury, and the petition was denied, whereupon this appeal was taken.

The undisputed facts as disclosed by the record may be stated as follows: Defendant was first organized about the year 1894 as an unincorporated mutual benefit association. In 1902 articles of incorporation as such were filed, and thereafter it repeatedly amended such articles. By an amendment of 1937 its purposes were stated as follows:

"(d)   To establish a mortuary or benefit fund from which, on satisfactory evidence of the death, old age or disability, a sum not exceeding Five Thousand ($5,000.00) Dollars may be paid to the widow, widower, orphans, relatives or others dependents who the member has during his lifetime designated as his beneficiary under the laws of this corporation, or to the member himself as Old Age, Disability or upon expulsion of the member, or at any time during the lifetime of the member, upon surrender or liquidation of his policy for any dues paid by the member or accumulated reserves on his or her benefit certificate, and as may be prescribed by the laws of the Society. Provided, however, no policy or benefit certificate less than Two Hundred Fifty—($250.00)—Dollars, nor more than Five Thousand—($5000.00)—Dollars can be issued to members of this Society."

"(j)   To provide for the payment of said benefit that may by the laws and by-laws of this corporation be required to be paid by requiring a monthly due from each member in good standing of said corporation, which monthly due shall be based upon the age of said member at the date of initiation and shall be graduated according to the laws and by-laws of the said corporation, as the same may be adopted at any of its Supreme Conventions or by referendum, which said sum shall not be less than the actual cost of providing said insurance and for the payments of said benefits, according to the best mortuary tables pertaining to such matters."

"(1)   To have power to levy upon each member of all subordinate lodges affiliated with this corporation one or more special assessments during any calendar year to make up or cover any deficit that may arise

in the reserve, beneficiary or mortuary fund of this society, or to provide such other funds of such corporation that may be required to be replenished or established to carry out the purposes of this corporation."

Its other purposes were such as are usually found in fraternal benefit societies, which operate under the lodge system with ritualistic work.

Plaintiff, when it made application to the superior court, as above set forth, alleged:

"That the Arizona Corporation Commission has made an examination of the business and affairs of respondent corporation . . . . Said examination disclosed and petitioners have found that respondent corporation is in such condition that its further transaction of business will be hazardous to its policy holders, to its creditors and to the public in the following particulars: . . ."

and then set forth the reasons why it believed it was hazardous for defendant to continue in business. Among these reasons were (a) the reserves of defendant were impaired to an extent of some $54,000; (b) during the preceding seventeen years some $350,000 had been diverted from the mortuary reserve fund to the general expense fund; (c) the books and records of defendant have not been properly kept so that its true condition could be ascertained, or whether its reserves were sufficient to meet the terms of the policies which it issued; (d) it had made a large portion of loans in a manner and to an extent not permitted by law; (e) it had held real estate in excess of an amount permitted to it by law for a period longer than allowed by law; (f) its governing officers were not qualified by experience or training to handle life insurance in any manner; and (g) that its expense fund was overdrawn to the extent of some $12,000.

The court found, in substance, that while the law had been violated in many respects in the past admin-

istration of the affairs of defendant, it was solvent within the rule approved for fraternal benefit associations, being section 61–919, Arizona Code 1939, and that the existing administration of defendant was proceeding in an adequate manner to restore all deficiencies, and to prevent their recurrence.

Plaintiff had contended that defendant was issuing certificates other than fraternal benefit insurance, and, therefore, came within the provisions of section 61–901, Arizona Code 1939, which reads as far as material as follows:

*"Societies defined—Operating on lodge system.—*

.    .    .    .    .    .    .    .    .    .    .

"Such societies shall be governed by this article, except as herein provided, and shall be exempt from all other provisions of insurance laws, except that any such society issuing any form of insurance other than fraternal benefit insurance shall be subject to all the provisions of this chapter governing companies issuing such other forms of insurance."

The law governing in such case would compel it to maintain one hundred per cent. solvency. The court concluded that defendant was not issuing insurance which brought it within the exception above set forth, and that the exception, therefore, had no bearing upon the issues involved.

The ultimate conclusion of the court was that defendant, in all respects, was a fraternal benefit association; that it was governed, so far as receiverships were concerned, by sections 61–919, 61–920, Arizona Code 1939, instead of by section 61–313, Arizona Code 1939, and that the evidence showed that any errors which had been made by previous administrations could and would be corrected by the present administration so as to make it one hundred per cent. solvent, and that in view of such a situation, the petition for receivership should be denied.

This proceeding was instituted under the provisions of section 61–313, *supra,* which reads so far as material as follows:

"*Insolvent domestic companies—When may be liqui-dated—Procedure—Powers of commission—Report.* —Whenever a domestic company is insolvent, or has refused to submit its books, papers, accounts, or affairs to the reasonable inspection and examination of the commission or its examiner; . . . or if it is found, after an examination, to be in such condition that its further transaction of business would be hazardous to its policy holders, or to its creditors, stockholders or the public; . . . the commission, through the attorney-general, may apply to the superior court in the county in which the principal office of the company is located, . . . for an order directing such company to show cause why the commission should not take possession of its property, and for such other relief as the interest of its policy holders, creditors, stockholders or the public may require.

" . . . On the return of such order to show cause, and after a hearing, the court may deny the application or direct the commission forthwith to take possession of the property, records, and effects, and conduct the business until, on the application of the commission, or of the company, it shall after a like hearing, appear to the court that the cause for such order has been removed and that the company can properly resume the possession and conduct its business."

We think the vital issue before the trial court was whether the interests of the public would be best served by permitting defendant to continue to function, or by placing it in a receivership. Even assuming that it comes under the provisions of section 61–313, *supra,* we think it is not sufficient that plaintiff should show merely that any or all of the particular things set forth in said section which authorize the bringing of the action existed, but it must also appear that under the existing circumstances it will be better for the policy holders, creditors, stockholders and the

general public that the affairs of defendant be administered under receivership by plaintiff rather than that defendant continue its own affairs under such terms and conditions as may be imposed by the court.

The purposes of a receivership are (a) to restore the company to a condition of solvency so that it may continue to function under its own management, and (b) if this cannot be done, to conserve its assets for distribution among its creditors and stockholders. It is a notorious fact that receiverships in the vast majority of cases are expensive and slow, and seldom result in a restoration of the company or an adequate return to the creditors, among whom of course policy holders are included. It is only under extreme circumstances, and when no other better remedy can be found, that a receivership should be granted.

There can be no doubt that the previous management of the association had conducted its affairs in a reckless, improvident, and, in many respects, illegal manner. But while this fact is entitled to great consideration by the court in determining whether a receivership should be granted, and, indeed, is a necessary preliminary for a consideration of the petition, it is not conclusive, and if on the whole record it reasonably appears that the affairs of defendant, under its new management, will be better conducted and defendant will eventually, under such a management, restore its impaired assets so as to be brought to a condition of one hundred per cent. solvency, it would be a harsh rule, indeed, to hold that the court must, as a matter of law, grant a receivership.

We have examined the record and find evidence, which if believed by the trial court, as it must have been, would justify its conclusion that notwithstanding the many derelictions in duty of the previous management of defendant, its present management should be given an opportunity to demonstrate that it can

restore the impaired financial condition better than a receivership can.

Under the constitution and by-laws of defendant, which are binding upon all its members, in case a deficit occurs it may be met by increased assessments upon the members. It is for this reason that impairment of the assets of a fraternal benefit organization is not as serious as that of an ordinary life insurance company. All of the policies of the latter are closed contracts, the premium is fixed, and no matter what the depletion of the assets, may not be increased. An impairment of its assets is, therefore, a much more serious thing than when the policies outstanding are fraternal benefit insurance policies like the great majority of those issued by defendant for with them the premium may be increased to restore impaired assets.

Of course there is one limitation to increased premiums even with a fraternal benefit policy. It can apply only to future and not to past premiums. In the present case defendant made a sixteen per cent. assessment on the surrender value of policies then in force. The trial court held, and we think properly, that such an assessment, while valid for the premiums of all policy holders in the future, could not affect the surrender value of existing policies as of the date of the assessment, for the reason that it would be an impairment of vested rights and a violation of the contract of insurance.

We think it unnecessary to discuss at length all of the many matters raised by plaintiff's brief. As we have stated, the ultimate question is whether, on the record, the trial court abused its discretion in finding that the interest of the general public would be better served at the present time by denying the petition for receivership. We cannot say it did.

This conclusion, of course, does not prevent plaintiff from making another application for receivership at

a later date, should developments indicate such a course is advisable.

The judgment is affirmed.

